United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS WANG,<br><br>    Plaintiff,<br><br>v.<br><br>MARTHA KONGSGAARD,<br><br>    Defendant. | Case No.19-cv-00907-EDL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY**<br><br>Re: Dkt. No. 15 |

    Defendant Martha Kongsgaard, individually and as Trustee of The Martha Kongsgaard GST Exempt Trust U/T/A/ dated October 21, 1993 ("Defendant") moves to dismiss the complaint filed by Plaintiff Francis Wang, individually and as Trustee of WFT-TNG ("Plaintiff"), or, in the alternative stay, proceedings. For the reasons discussed below, the Court GRANTS Defendant's motion to stay this case pending the state court proceedings based only on the Colorado River doctrine. The parties are ordered to file a joint status report upon the termination of the state case and, in the interim, joint status reports every 180 days until the state proceedings conclude.

## I. FACTUAL ALLEGATIONS

    Plaintiff owns property located at 460 Stonecrest Drive, Napa, California. Compl., ¶ 6. Defendant owns adjacent property at 550 Stonecrest Drive, Napa, California. Id., ¶¶ 9, 11. The properties share a common boundary to the north and east of the 460 Stonecrest property and the south and west of the 550 Stonecrest property. Id., ¶ 11. Plaintiff purchased 460 Stonecrest Drive in 1988 and Defendant has owned 550 Stonecrest since 1980. Id., ¶¶ 7, 9.

    There is a hill on Stonecrest Drive, of which Defendant owns a substantial portion. Id. Plaintiff discovered that the hillsides around his home had many loose rocks and large boulders that posed a serious danger to the 460 Stonecrest property when rocks and boulders slide down the hillsides, particularly during heavy rains, and caused damage to the property. Id., ¶ 12. The

hillside was also difficult to traverse and has tall weeds and thick brush that creates a fire hazard. Id.

In the mid-1990s, Plaintiff began spending considerable time and resources to stabilize the hillside and reduce the hazardous vegetation. Id. This work included removing dead trees and brush, terracing the hillside, developing fire access trails, and creating planting beds with watering systems. Id. Eventually, Plaintiff fixed the terraces with retaining walls, pathways, and staircases for social uses, doing so with the knowledge that the improvements were being constructed on property owned by Defendant. Id., ¶ 13. Through these improvements, Plaintiff gained easement rights, and Defendant has engaged in efforts to interfere with Plaintiff's use of those areas. Id., ¶¶ 14-15. Defendant has also encroached upon Plaintiff's property at 460 Stonecrest by breaching a water pump agreement and encroaching on an electrical utility power line. Id., ¶ 25.

On or about May 28, 2010, Defendant sent correspondence to Plaintiff inviting an offer to purchase a portion of the 550 Stonecrest property. Id., ¶ 16. On or about July 8, 2010, Plaintiff prepared a written agreement providing for the purchase of a 12-acre portion of the 550 Stonecrest property by Plaintiff for $400,000 with the immediate payment of $7,500 in earnest money (the "Purchase Agreement"). Id., ¶ 17. Defendant signed the Purchase Agreement on or about September 8, 2010. Id., ¶ 18, Ex. B (fully executed copy of the Purchase Agreement). The Purchase Agreement included a provision that the 12-acre parcel of land would not be subject to the Williamson Act[1] based on Defendant's representation that the Williamson Act Agricultural Preserve contract was about to terminate and would not be renewed. Id., ¶ 19.

Despite this provision of the Purchase Agreement, Defendant entered into a new Williamson Act Agricultural Preserve contract in June 2011 that impacted the 12-acre parcel. Id., ¶ 20. On or about April 4, 2011, Defendant wrote Plaintiff stating that: "We regret that we have been unable to reach an agreement concerning the 12 acres belonging to 550 Stonecrest. We are no longer interested in pursuing negotiations." Id., ¶ 21. On or about April 5, 2011, Plaintiff

---

[1] The Williamson Act, also known as the California Land Conservation Act of 1965, enables local governments to enter into contract with private landowners for the purpose of restricting specific parcels of land to agricultural or related open space use. Cal. Gov't Code §§ 51200-51295. In return, landowners receive reduced property tax assessments. Id.

1 responded that he wished to abide by the terms of their agreement and proceed with the
2 transaction. Id., ¶ 22. Following this exchange of correspondence, the parties disputed whether
3 the Purchase Agreement was enforceable. Id., ¶¶ 23-24.
4     Subsequently, the parties commenced settlement discussions. Id., ¶¶ 26-27. To that end,
5 the parties entered into a tolling agreement that commenced on July 1, 2011. Id., ¶¶ 28-30.
6 Defendant represented to Plaintiff that after a number of years the conservation easement would
7 expire and the sale could be completed. Wang Decl., ¶ 7. Plaintiff recently learned that
8 Defendant's land was not under a conservation easement in 2010 and Defendant entered into a
9 new conservation easement only after executing the Purchase Agreement. Id.
10     On November 29, 2018, Napa County Planning, Building, and Environmental Services
11 Department ("Napa County") cited Defendant for violations of the California Building Code and
12 the Napa County Code for the improvements Plaintiff made to the 550 Stonecrest property.
13 Kongsgaard Decl., ¶ 2, Ex. A. Napa County's citation required Defendant to take corrective
14 measures, apply for the required permit, or otherwise face monetary penalties. Id. Defendant also
15 faces fines and increased property tax liability under the Williamson Act. Id., ¶ 3. On January 7,
16 2019, Defendant served notice of intent to initiate litigation, which Defendant believed terminated
17 the tolling agreement 30 days thereafter. Id., ¶ 31. On February 15, 2019, Defendant filed a
18 complaint in state court against Plaintiff and Laura Young, raising claims to quiet title, for
19 injunctive relief, trespass, nuisance, negligence, and for declaratory relief. Flaherty Decl., ¶ 3, Ex.
20 A; Request for Judicial Notice ("RJN"), Ex. A. Defendant served discovery requests on Plaintiff
21 in the state court action and Plaintiff's responses to those requests are due on May 14, 2019. Id.,
22 ¶¶ 4-5. Plaintiff's response to the state court complaint was due on April 23, 2019, although
23 Plaintiff filed a motion to stay proceedings in lieu of filing an answer. Id., ¶ 6.

24 **II.    PROCEDURAL HISTORY**

25     Plaintiff filed his federal complaint here on February 19, 2019, four days after Defendant
26 filed suit in state court. Plaintiff's complaint alleges claims for breach of contract, breach of the
27 covenant of good faith and fair dealing, negligence, nuisance, trespass, fraud, and trespass to
28 timber. The complaint asks for injunctive relief, declaratory relief, and specific performance.

1  Defendant responded with this motion to dismiss or stay proceedings.

2  **III.    DISCUSSION**

3  Defendant moves to dismiss under Rule 12(b)(1) on the ground that the Court should abstain from exercising jurisdiction over Plaintiff's claims under the abstention doctrines outlined in Younger v. Harris, 401 U.S. 37 (1971), and Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). In the alternative, Defendant asks the Court to stay this case pending resolution of the state court action.

As an initial issue, Plaintiff points out that the Court indisputably has diversity jurisdiction over this case because Plaintiff is a resident of California, Defendant is a resident of Washington state, and the controversy involves more than $75,000. Thus, Plaintiff urges the Court to deny Defendant's motion because abstention is "'an extraordinary and narrow exception to a district court's duty to adjudicate a controversy properly before it.'" Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 728 (1996) (quoting Colorado River, 424 U.S. at 813)).

Plaintiff is correct that "[g]enerally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction.'" Colorado River, 424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)); see also Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 72 (2013) ("Abstention is not in order simply because a pending state-court proceeding involves the same subject matter."). Yet the abstention doctrines are jurisprudential concepts that permit a court to decline jurisdiction when there are heightened concerns about the inconvenience of the federal forum, comity, or the conservation of judicial resources. See Colorado River, 424 U.S. at 817-18; Sprint Commc'ns, 571 U.S. at 72 (there are "certain instances in which the prospect of undue interference with state proceedings counsels against federal relief"); San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008). The two abstention doctrines that Defendants relies on are discussed below.

**A.    Younger Abstention**

The Younger abstention doctrine was developed out of respect for limiting equity jurisdiction not to unduly encroach on the role of the jury and a concern for comity and judicial

4

economy. Gilbertson v. Albright, 381 F.3d 965, 970 (9th Cir. 2004) (en banc) (explaining the history of the doctrine). As the Ninth Circuit has observed:

> [E]quitable principles prevent erosion of the role of the jury and duplication of legal proceedings when a single suit would be adequate to protect the rights asserted. Principles of comity, on the other hand, preserve respect for state functions such that the national government protects federal rights and interests in a way that will not "unduly interfere with the legitimate activities of the States."

Id. (quoting Younger, 401 U.S. at 43-45).

Abstention under the Younger doctrine is appropriate if four conditions are met: "(1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that Younger disapproves." San Jose Silicon Valley, 546 F.3d at 1092. Under this doctrine, "federal courts must refrain from hearing constitutional challenges to state action under certain circumstances in which federal action is regarded as an improper intrusion on the right of a state to enforce its laws in its own courts." Wright & Miller, Fed. Prac. & Proc., § 4251.[2]

Defendant argues that all four elements of Younger abstention are present here. Defendant contends that the first element that "a state-initiated proceeding is ongoing" is satisfied because the state-court case is in the midst of discovery and remains active. However, in general the Younger doctrine has only been applied "to particular state civil proceedings that are akin to criminal prosecutions or that implicate a State's interest in enforcing the orders and judgments of its courts." Sprint Commc'ns, 571 U.S. at 72-73 (citing Huffman v. Pursue, Ltd., 420 U.S. 592

---

[2] An exception to Younger abstention applies when "there is a 'showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate.'" Id. (quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 435 (1982)). Plaintiff made certain off-handed remarks in his opposition that Defendant breached the tolling agreement by filing her case in state court, presumably to elude the Younger doctrine. Plaintiff does not explain how Defendant breached the tolling agreement and there are no allegations or arguments that the tolling agreement was also a covenant not to sue. Defendant's attorney filed a declaration attesting that the tolling agreement "does not restrict either party from pursuing litigation at any time, it merely tolls the applicable statute of limitations." Flaherty Decl., ¶ 6. This argument is not persuasive.

1  (1975) and Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987)).  Accordingly, the Supreme Court has
2  "stressed" that "[c]ircumstances fitting within the Younger doctrine . . . are 'exceptional'; they
3  include . . . 'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings
4  involving certain orders that are uniquely in furtherance of the state courts' ability to perform their
5  judicial functions.'"  Id. at 73.  Defendant's state court claims do not fit into the categories of
6  "extraordinary" cases recited in Sprint Commc'ns.

7  Defendant next argues that the state proceeding satisfies the second Younger element
8  because the state case implicates California's important interest in determining real property rights
9  and obligations.  For purposes of the Younger doctrine, "'[t]he importance of the interest is
10 measured by considering its significance broadly, rather than by focusing on the state's interest in
11 the resolution of an individual's case.'"  San Jose Silicon Valley, 546 F.3d at 1094 (quoting
12 Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 618 (9th Cir. 2003)).  Defendant's state court
13 action is an effort to delineate the property rights between Defendant and Plaintiff in the 550
14 Stonecrest property.  "[P]roperty rights have historically been considered an area of state
15 concern."  Logan v. U.S. Bank Nat'l Ass'n, 2010 WL 1444878, at *3 (C.D. Cal. Apr. 12, 2010)
16 (citing Wong v. Astrue, 2008 WL 2051044, at *4 (N.D. Cal. May 13, 2008) (in case in which the
17 plaintiff challenged her eviction by the San Francisco Housing Authority, holding that "California
18 has an important interest in protecting real property transfers and leasehold estates, which have
19 historically and traditionally been the domain of the states, and not the federal government.  Thus,
20 the state interests here support the Court abstaining under Younger.").  As Defendant points out on
21 reply, the State of California also has an interest in the tax implications of this case because it
22 involves regulation under the Williamson Act.

23 Plaintiff contends that the state *must* be a party to the action to implicate a state right, but
24 cites no case law that supports that proposition.  Often, a state actor is involved in cases where the
25 Younger doctrine is applicable, but the Court is not aware of precedent that requires the state to be
26 a party to the litigation and Plaintiff points to none.  Defendant has established the second element
27 of Younger abstention.

28 The third element is that the plaintiff in the federal case is not barred from asserting his

federal constitutional issues in the state case.  Middlesex, 457 U.S. at 432 ("'[T]he . . . pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims'") (quoting Moore v. Sims, 442 U.S. 415, 430 (1979)).  In some instances, courts have formulated this prong more broadly by explaining that "[t]he third prong of the Younger analysis asks whether the plaintiff has or had an 'adequate' or 'full and fair' opportunity to raise its federal claims in the state proceedings."  Commc'ns Telesystems Int'l v. Cal. Public Utility Com'n, 196 F.3d 1011, 1019 (9th Cir. 1999).  Defendant contends that Younger abstention applies because Plaintiff has not raised any federal claims in the action he filed with this Court and Plaintiff cannot argue that he was precluded from raising his claims with the state court.  In her reply, Defendant also argues that Plaintiff concedes that the third prong is met.

However, Plaintiff's opposition argued persuasively that Defendant's application of the Younger doctrine is improper because there is no constitutional question raised by the federal complaint.  The Younger doctrine, as explained in Gilbertson, is concerned with the issues of federalism and comity where a federal court is asked to resolve federal claims that would effectively terminate an ongoing, related state court case.  For example, this concern was implicated in Gilbertson where the plaintiff brought a 42 U.S.C. § 1983 claim against members of Oregon's State Board of Examiners for Engineering and Land Surveying after they revoked the plaintiff's land surveying license, contending that the board members retaliated against him for exercising his First Amendment rights, violated his due process rights, and denied him equal protection.  381 F.3d at 982.  Here, there is no such federal claim, constitutional or otherwise.

The final element that must be shown to warrant Younger abstention is that the federal action would enjoin or have the practical effect of enjoining the state action.  Plaintiff's federal complaint seeks damages, as well as an order compelling Defendant to perform the Purchase Agreement and a permanent injunction to bar Defendant from interfering with Plaintiff's easement rights.  If the Court were to side with Plaintiff on his claims and enter the requested relief, it would potentially have the practical effect of adjudicating the property right claims that Defendant has raised before the state court.  Direct interference – such as an injunction of the state proceedings themselves – is not a requirement for application of the Younger doctrine.  Gilbertson, 381 F.3d at

7

1    968-69.

2    As discussed above, some elements of the Younger abstention doctrine test are met, but
3    others are not.  This case does not fall within the categories of "exceptional" cases discussed in
4    Spring Commc'ns and also does not raise an issue of federal law.  Accordingly, the Court declines
5    to invoke the Younger abstention doctrine to dismiss or stay this case.

6    **B.    Colorado River Doctrine**

7    Even when a case does not fall within the Younger abstention doctrine, a court may
8    nevertheless decide to decline jurisdiction due to "considerations of '(w)ise judicial
9    administration, giving regard to conservation of judicial resources and comprehensive disposition
10   of litigation.'"  Colorado River, 424 U.S. at 817 (quoting Kerotest Mfg. Co. v. C-O-Two Fire
11   Equip. Co., 342 U.S. 180, 183 (1952)).  In light of a federal court's obligation to exercise
12   jurisdiction, "the circumstances permitting the dismissal of a federal suit due to the presence of a
13   concurrent state proceeding for reasons of wise judicial administration are considerably more
14   limited than the circumstances appropriate for abstention.  The former circumstances, through
15   exceptional, do nevertheless exist."  Id. at 818.  "Only the clearest of justifications will warrant
16   dismissal."  Id. at 819.  The Ninth Circuit favors a stay, rather than dismissal, when the Colorado
17   River factors favor declining the exercise of jurisdiction.  Montanore Minerals Corp. v. Bakie, 867
18   F.3d 1160, 1166 (9th Cir. 2017).

19   In Colorado River, the Supreme Court held that the circumstances warranted dismissal of
20   the concurrent federal proceedings.  The Court first noted the application of an amendment to
21   federal law demonstrated a federal policy of avoiding piecemeal adjudication of water rights in a
22   river system.  Colorado River, 424 U.S. at 818.  It also noted that the federal proceedings were
23   extremely limited, there was extensive involvement of state water rights (i.e., a res), and there was
24   a great geographic distance between the federal court and the state proceedings.  Id.

25   Later cases have further developed this doctrine.  The following is a non-exclusive list of
26   factors that courts consider in determining whether the Colorado River doctrine applies and a case
27   should be dismissed or stayed pending parallel state court proceedings on the same subject matter:
28   (1) whether either the state or federal court has exercised jurisdiction over a res; (2) the

inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal or state law controls the decision on the merits; (6) whether the state court can adequately protect the rights of the parties; and (7) whether a stay would discourage forum shopping. 40235 Washington Street Corp. v. Lusardi, 976 F.2d 587, 588 (9th Cir. 1992); Am. Int'l Underwiters (Philippines), Inc. v. Continental Ins. Co., 843 F.2d 1253, 1259 (9th Cir. 1988). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." Colorado River, 424 U.S. at 818-19. "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay" under Colorado River. Intel Corp., 12 F.2d at 913.

A threshold consideration is whether the state and federal proceedings are sufficiently parallel. "Exact parallelism" between the state and federal case is not a requirement and the proceedings need only be "substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) (holding that state and federal case that both "concern how the respective parties have conducted themselves since [the plaintiff] purchased a portion" of a company were substantially similar for purposes of applying the Colorado River doctrine). Here, both cases concern the rights and obligations of Plaintiff and Defendant as they relate to the property at 550 Stonecrest. Although Plaintiff's complaint raises some claims, such as breach of contract and fraud, outside the state action, the state action and the federal action have a great deal of overlap. Plaintiff acknowledged the overlapping nature of the two cases when he argued in his motion to stay the state action that "this Action [the Napa County Superior Court case] is substantially similar to the Wang Complaint in Federal Court, essentially involving two sides of the same coin" and that "[t]here is no good reason why two courts should devote time and effort deciding the same factual and legal issues." Defendant's Request for Judicial Notice, Ex. A at 8: 6-7, 16-17. These cases are, as Plaintiff puts it in his brief in support of his motion to stay the state court proceedings, "two sides of the same coin," arising from the same set of facts.

Next, the Court must consider the factors discussed in Colorado River and its progeny.

When the proceedings are in rem or quasi in rem that factor is dispositive because "the forum first assuming custody of the property at issue has exclusive jurisdiction to proceed." 40235 Washington Street Corp., 976 F.2d at 589 (citing Colorado River, 424 U.S. at 819). This factor "applies when both forums exercise jurisdiction over the same property, and addresses the concern 'that the parallel proceedings will result in inconsistent dispositions of [such property].'" Montarnore, 867 F.3d at 1166 (quoting Seneca Ins. Co., Inc. v. Strange Land, Inc., 862 F.3d 835, 840 (9th Cir. 2017)). Here, Defendant's state court complaint seeks to quiet title to the 550 Stonecrest property, which is the same property that is the subject of Plaintiff's complaint in this court. "A quiet title action is a proceeding in rem," so a stay of these proceedings is required. 40235 Washington Street Corp., 976 F.2d at 589.

Consideration of the remaining relevant factors also counsels in favor of a stay of these proceedings. The Northern District of California is not an inconvenient forum, particularly as San Francisco and Napa are only approximately 50 miles apart and Defendant resides in another state. Defendant contends that there are "multiple parties and individuals" involved beside herself, presumably her other relatives that are beneficiaries of the trust, which makes San Francisco an inconvenient forum. While other individuals might be interested in the proceedings, Plaintiff and Defendant are the only actual parties to the case. Moreover, the 50 mile distance between Napa and San Francisco is not burdensome. In both cases, state law will be applied and the state court obtained jurisdiction first, albeit only by a few days. The state proceedings are slightly more advanced as Defendant has already served discovery and Plaintiff's response to the complaint was due in April, although he filed a motion to stay the state proceedings instead of filing an answer, which may or may not have been procedurally proper. There is also the significant risk that two separate litigations will result in piecemeal litigation and/or conflicting outcomes. As a practical matter, Plaintiff may be able to eliminate all of these difficulties by raising his claims in a cross-claim in state court, as he acknowledges in his opposition brief.

On balance, it is appropriate to stay this case pending the state court litigation. Permitting this case to proceed in whole or part while a substantially similar case involving the same property is simultaneously litigated in state court would not serve Rule 1's admonition that the Court ensure

that "just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.  Accordingly, this case is STAYED pursuant to Colorado River.

### IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Defendant's motion to stay this case pending the state court proceedings based only on the Colorado River doctrine.

**IT IS SO ORDERED.**

Dated: May 15, 2019

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge