1  **CHRISTOPHER A. NEDEAU, ESQ. (SBN 081297)**
   **GREGORY J. RYKEN, ESQ. (SBN 058199)**
2  **LAW OFFICES OF GREGORY J. RYKEN**
   **750 Battery Street, Seventh Floor**
3  **San Francisco, California 94111**
   **Telephone: (415) 524-0070**
4  *Attorneys for PLAINTIFFS*
   *FRANCIS WANG and LAURA YOUNG, individually*
5  *and as Trustees of WFT-TNF, a California Trust*

6

7

8
                   **UNITED STATES DISTRICT COURT**
9                  **NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 10  FRANCIS WANG, individually and as Trustee of WFT-TNG, a California Trust, | Case No. 3:19-cv-00907 |
| 11  and LAURA YOUNG, individually and as Trustee of WFT-TNG, a California Trust | **FIRST AMENDED COMPLAINT** |
| 12  | |
| 13      Plaintiffs, | 1. Racial Discrimination in the Making or Enforcement of Contract |
| 14  | 2. Racial Discrimination in Real Property Transactions |
| 15      v. | 3. Conspiracy to Deprive Equal Protection Under the Laws |
| 16  | 4. Failure to Prevent Conspiracy to Deprive Equal Protection Under the Laws |
| 17  MARTHA KONGSGAARD, individually and as Trustee of The Martha Kongsgaard GST Exempt Trust U/T/A dated October 21, | |
| 18  1993, PETER GOLDMAN, ALBERT F. CZAP, and BRIAN PELETTA, | [DEMAND FOR JURY TRIAL] |
| 19  | |
| 20      Defendants. | |

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

Page

JURISDICTION, VENUE, AND PARTIES ........................................... 3

INTRADISTRICT ASSIGNMENT .................................................. 4

GENERAL ALLEGATIONS ........................................................ 4

FIRST CAUSE OF ACTION ...................................................... 11

SECOND CAUSE OF ACTION .................................................. 13

THIRD CAUSE OF ACTION .................................................... 14

FOURTH CAUSE OF ACTION .................................................. 17

PRAYER FOR RELIEF ........................................................... 18

DEMAND FOR JURY TRIAL .................................................... 19

Plaintiffs allege as follows:

## JURISDICTION, VENUE, AND PARTIES

1.     PLAINTIFF FRANCIS WANG, individually, and as Trustee of WFT-TNG, a California Trust (hereinafter collectively referred to as "WANG") is, and at all times mentioned in this Complaint has been, a citizen of the State of California.  WANG was born in Shanghai, China and is an Asian American male.

2.     PLAINTIFF LAURA YOUNG, individually, and as Trustee of WFT-TNG, a California Trust (hereinafter collectively referred to as "YOUNG") is and at all times mentioned in this Complaint has been a citizen of the State of California.  YOUNG was born in the United States and is an Asian American female.  WANG and YOUNG are collectively referred to herein as "PLAINTIFFS."

3.     DEFENDNT MARTHA KONGSGAARD, individually and as Trustee of The Martha Kongsgaard GST Exempt Trust U/T/A dated October 21, 1993 (hereinafter collectively referred to as ("KONGSGAARD") is a Caucasian woman and a citizen of the State of Washington.

4.     DEFENDNT PETER GOLDMAN (hereinafter referred to as ("GOLDMAN") is a Caucasian male and a citizen of the State of Washington.

5.     DEFENDANT ALBERT F. CZAP (hereinafter referred to as "CZAP") is a Caucasian male and a citizen of the State of California.

6.     DEFENDANT BRIAN PELETTA (hereinafter referred to as "PELETTA") is a Caucasian male and a citizen of the State of California.

7.     The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.     This Court has original jurisdiction of PLAINTIFFS' 42 U.S.C. §§ 1981, 1982, 1985, and 1986 claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4).

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c).  DEFENDANTS are subject to personal jurisdiction in this District in that they each own property in the District and committed the discriminatory acts alleged herein in this District.

3

**INTRADISTRICT ASSIGNMENT**

10.     Pursuant to Civil L.R. 3-2(d), this action shall be assigned to the San Francisco Division. The subject discrimination in making and enforcement of contracts, discrimination in sale of real property, conspiracy to deny equal protection under the law and failure to prevent a conspiracy to deprive equal protection under the law concern the sale and easement rights of real property located in Napa County, California.

11.     Each of the claims set forth herein involves real property located in Napa County.

**GENERAL ALLEGATIONS**

12.     PLAINTIFFS reallege and incorporate each and every allegation set forth in the preceding paragraphs of this Complaint as if the same were fully set forth herein.

13.     PLANTIFFS are married; and between 1988 and 2013, WANG held record title of that certain residential property located at 460 Stonecrest Drive, Napa, California 94558, more particularly known as Assessors' Parcel Number 052-030-008 (hereinafter referred to as "460 STONECREST"). WANG purchased 460 STONECREST as the primary residence for himself and his wife, YOUNG.

14.     PLAINTIFFS became Trustees for the WFT-TNG, a California Trust ("Trust"), in 1998, and transferred record title to 460 STONECREST into the Trust effective January 2013.

15.     KONGSGAARD resides in Seattle, Washington and at all times relevant herein has maintained an ownership interest in that certain residential property located at 550 Stonecrest Drive, Napa, California 94558, more particularly known as Assessors' Parcel Number 052-030-052 (hereinafter referred to as "550 STONECREST"). KONGSGAARD acquired a one-third ownership interest in 550 STONECREST on November 3, 1980 when she inherited the property from her grandmother.

16.     GOLDMAN resides in Seattle, Washington and is married to KONGSGAARD.

17.     CZAP purchased 600 Stonecrest Drive in Napa County, California in approximately October 2012 as his residence and continues to own the property.

18.     PELETTA resides within the County of Napa, State of California. In 2013 he purchased 440 Stonecrest Drive, Napa County, California, a parcel of real estate which shares a

4

1  boundary with PLAINTIFFS on a northeastern edge of his land and on a southwestern edge of

2  460 STONECREST, and continues to own the property.

3      19.   PLAINTIFFS' 460 STONECREST property, and KONGSGAARD'S 550

4  STONECREST property have at all times relevant herein been located adjacent to each other,

5  sharing a common boundary to the north and east of 460 STONECREST, and south and west of

6  550 STONECREST. Until about 2018, there was a barb wire fence running roughly parallel

7  with the northeastern border between 460 STONECREST and 550 STONECREST that

8  PLAINITFFS incorrectly believed was the border between the two properties. The 550

9  STONECREST property of approximately 20 acres sits in the middle of a densely populated

10  residential neighborhood.

11      20.   PLAINTIFFS and their children have lived at 460 STONECREST for over 30

12  years. After several years, PLAINTIFFS discovered that the steep hillside on 550

13  STONECREST behind their house was covered with loose rocks and large boulders which slid

14  and rolled down the steep hillsides, along with a torrent of water and other debris, during heavy

15  rains in the winter. The rocks and boulders caused damage to 460 STONECREST and posed a

16  hazard to the safety of PLAINTIFFS and their three children. The east hillside ridge which is

17  part of the adjacent 550 STONECREST property was steep and difficult to traverse with tall

18  weeds and thick brush in summer and fall, causing a serious potential fire hazard to

19  PLAINTIFFS' home and property. At no point in 30 years did PLAINTIFFS ever see

20  KONGSGAARD, GOLDMAN, their relatives, gardeners, vineyard workers or agents on 550

21  STONECREST providing any maintenance or upkeep for the hillside on the north and east side

22  of the ridge. No one cleared the underbrush, cut down the weeds, removed dead branches or

23  fallen trees, or attempted to stabilize the loose rocks and boulders on the hillside.

24      21.   Rockslides, earthquakes, and wildfires are endemic in Napa County. During the

25  mid-1990's PLAINTIFFS tried to reduce the fire fuel burden on the hillside and to stabilize the

26  hillside erosion and reduce the torrent of water debris coming down the hillside. To prevent

27  erosion, between late 1995 and 1997, PLAINTIFFS created planting beds with drip watering

28  systems on about 1.5 acres of the terraces. To prevent rocks and boulders from rolling down the

1   hillside, PLAINTIFFS installed a series of retaining walls. PLAINTIFFS added gravel

2   walkways and watered planting beds alongside the terraces. These improvements were installed

3   below the fence line. PLAINTIFFS believed was the property line. However, PLAINTIFFS

4   were wrong; these improvements were installed on 550 STONECREST. PLAINTIFFS also

5   cleared brush on about 5 acres of land for fire trails to gain access and service the steep hillside

6   for fire prevention maintenance and so emergency crews could gain access to create fire breaks

7   to prevent the spread of wildfires. The fire trails were constructed on 550 STONECREST.

8       22.     PLAINTIFFS made these improvements on portions of 550 STONECREST

9   belonging to KONGSGAARD in order to protect PLAINTIFFS' home and family as well as the

10  neighboring residences from rockslides, water, debris and wildfires.

11      23.     By virtue of PLAINTIFFS' use, improvements, and development of 550

12  STONECREST, they have gained prescriptive easement rights to the west hillside portion of 550

13  STONECREST adjacent to 460 STONECREST.

14      24.     On the border between 440 Stonecrest and 460 STONECREST, there is an

15  extremely steep cliff and in 1997, WANG constructed a wall approximately 290 feet long and 18

16  feet tall in places to stabilize the hillside. At the bottom of the hillside there was a fence, and

17  WANG and the prior owner of 440 STONECREST believed that that fence was the border

18  between the properties. Once again, however, WANG was mistaken: the border between the

19  properties was 30-40 feet northeast of the barbwire fence; and the wall was built entirely on 440

20  Stonecrest.

21      25.     On May 28, 2010, Mary Kongsgaard sent a letter on behalf of her sister,

22  MARTHA KONGSGAARD and brother, John Kongsgaard, who were co-owners of the property

23  with her at that time, to FRANCIS WANG inviting him to make an offer to purchase a portion of

24  550 STONECREST to resolve problems created by the encroachment and claimed easement.

25  Mary wrote: *"We've done quite a bit of discovery regarding the Williamson Act. It seems that it*

26  *will be possible to cancel our contract. At this point the only reason to cancel would be to*

27  *partition off a piece of 550 Stonecrest so that you could buy it. Before we would proceed in that*

28  *direction, we would want an offer from you, then a signed agreement indicating the amount of*

1 | *land you would want, and then a check for earnest money."* (DEFS 0449 marked as Exhibit A).

2 |     26.    After further discussions and agreement with Mary Kongsgaard, on July 8, 2010,

3 | PLAINTIFFS prepared and sent an offer (DEFS 0312 marked as Exhibit B) to purchase a 12-

4 | acre portion of the property at 550 Stonecrest. The terms of the offer (hereinafter referred to as

5 | the "PURCHASE AGREEMENT") provided that then-co-owners Mary Kongsgaard, John

6 | Kongsgaard, and MARTHA KONGSGAARD would deed approximately 12 acres of the 550

7 | STONECREST to PLAINTIFFS in exchange for PLAINTIFFS' payment of $400,000.

8 | Additionally, the PURCHASE AGREEMENT provided for payment of money as consideration.

9 |     27.    On September 8, 2010, MARTHA KONGSGAARD, by and through her agent,

10 | John Kongsgaard, signed the PURCHASE AGREEMENT. John Kongsgaard also signed the

11 | PURCHASE AGREEMENT on behalf of himself and Mary Kongsgaard. Plaintiffs provided a

12 | check for $7,500 which was deposited on September 14, 2010.

13 |     28.    The PURCHASE AGREEMENT required that an approximately 12-acre portion

14 | of 550 STONECREST would no longer be subject to the Williamson Act, also known as the

15 | California Land Conservation Act of 1965. The PURCHASE AGREEMENT expressly

16 | represented that the Williamson Act's Agricultural Preserve contract was about to expire and

17 | KONGSGAARD and her siblings would not renew it.

18 |     29.    On January 24, 2011, MARTHA KONGSGAARD and co-owners Mary and John

19 | Kongsgaard signed an application for a Type "H" Agricultural Preserve Contract to renew the

20 | Williamson Act coverage for 550 STONECREST. (DEFS 0177, marked as Exhibit C.) Neither

21 | MARTHA KONGSGAARD nor her co-owner siblings disclosed to PLAINTIFFS that they were

22 | renewing the Williamson Act contract for ten years, rather than cancelling it as required by the

23 | PURCHASE AGREEMENT.

24 |     30.    On March 11, 2011, KONGSGAARD and her siblings executed a 1031 Tax Free

25 | Exchange Agreement with the closing of the transaction on April 30, 2011 which made the sale

26 | of a portion of 550 Stonecrest to the Wangs a violation of the tax code during the 2-year

27 | investment holding period. KONGSGAARD and GOLDMAN did not disclose the existence of

28 | this agreement until GOLDMAN informed YOUNG in an email dated October 10, 2011.

31.    On April 4, 2011, Mary Kongsgaard acting as the agent of KONGSGAARD sent a letter to them which stated: "*We regret that we have been unable to reach an agreement concerning the 12 acres belonging to 550 Stonecrest. We are no longer interested in pursuing negotiations.*" (DEFS 0492, marked as Exhibit D)

32.    On May 1, 2011, GOLDMAN wrote to YOUNG proposing to amicably resolve the dispute by suggesting that the parties enter into a land lease for the subject 12 acres to remain in force as long as he and KONGSGAARD owned 550 STONECREST. On May 17, 2011, GOLDMAN e-mailed the new settlement offer to YOUNG. GOLDMAN threatened that if PLAINTIFFS did not accept the new offer, he and his wife, KONGSGAARD, would erect a fence along their property line to cut off PLAINTIFFS' access to their hillside terraces and gravel pathways on which they claimed to have an easement. This fence across the north-east hillside would destroy terraces, retaining walls, drainage collection, gravel "dry zone" pathways, irrigated planting beds, and fire trails which PLAINTIFFS built to protect their house, family and the neighborhood.

33.    When PLAINTIFFS did not accept GOLDMAN'S new offer, KONGGAARD and GOLDMAN hired land use attorneys who opined that PLAINTIFFS may have breached the Williamson Act by making recreational improvements not associated with a residence on 550 STONECREST which created a cloud on the KONGSGAARD's title. The attorneys hired by KONGSGAARD and GOLDMAN threatened that PLAINTIFFS' breach would result in recapture of tax assessments and imposition of penalties. KONGSGAARD and GOLDMAN sent their attorney's letter along with a new demand to PLAINTIFFS and gave them seven days to agree to the new terms, threatening to sue if they refused to agree to settle.

34.    On June 28, 2011, KONGSGAARD, along with co-owners Mary and John Kongsgaard, entered into Napa County Agricultural Preserve Type "H" Contract No. P11-00021-AGK. The contract rescinded and replaced the existing Williamson Act contract, adjusted the lot line between two parcels and prevented transfer of the 12-acre portion of 550 STONECREST. KONGSGAARD did not reveal the breach mentioned by their land use that was allegedly in violation of the Williamson Act in their new application for a Napa County

FIRST AMENDED COMPLAINT
Case No. 3:19-cv-00907

1    Agricultural Preserve Contract.

2        35.    On December 20, 2013, MARTHA KONGSGAARD purchased her sibling's,

3 Mary Kongsgaard's, interest in 550 STONECREST, becoming the sole owner of the property.

4        36.    On or about March 6, 2018, KONGSGAARD, by and through the actions of her

5 co-conspirator, CZAP, intentionally, and without notice or permission, entered onto

6 PLAINTIFFS' property cutting down and removing trees and bushes which were wholly or in

7 part, on 460 STONECREST in violation of California Civil Code § 3346(a) as well as California

8 Code of Civil Procedure §§ 733 and 734.

9        37.    On July 5, 2018, CZAP with the knowledge and approval of KONGSGAARD, and

10 PELETTA filed a Nuisance Abatement Complaint with the County of Napa Code Enforcement

11 Division regarding PLAINTIFFS' 460 STONECREST PROPERTY which stated: *"illegal*

12 *building, grading without permit, illegal construction, concern for drainage runoff. Conditions*

13 *have existed for over 10 years. Currently they are working . . ."*

14        38.    At no time did PLAINTIFFS grant KONGSGAARD, GOLDMAN, OR CZAP

15 permission to enter their property, take photographs or damage or cut down their trees and

16 bushes.

17        39.    On July 24, 2018, CZAP with the knowledge and approval of KONGSGAARD

18 sent an email to Napa County Building Inspector Gregory Baxter copying DEFENDANTS

19 stating in pertinent part: *"Thank you for the follow through visit this morning. As I said to you,*

20 *Martha has given me permission to walk anywhere on her property to perform work to lessen*

21 *fire danger as well as for any reason that is beneficial to her interest. [portions omitted]. . I have*

22 *no problem running point with Wang, it would be fun. I have dealt with attorneys, judges and*

23 *government officials for many years, including helping the FDA on some projects so this is really*

24 *not hard."* (KONGSGAARD 00041, marked as Exhibit E)

25        40.    On September 26, 2018, PELETTA and CZAP with the knowledge and approval

26 of KONGSGAARD requested and made an appointment for a site inspection of 460

27 STONECREST by the California Department of Fish and Wildlife (DFW) and the San Francisco

28 Bay Regional Water Quality Control Board (WQCB): *"to explore the possibility of*

9

1  *environmental damage caused by Wang's discharge, run-off into the creek, soil erosion, use of*
2  *hazardous chemicals, weed, and deer repellants."* KONGSGAARD gave the DFW and WQCB
3  permission to have access onto her land for the purpose of investigating PLAINTIFFS' alleged
4  violations.

5      41.   CZAP continually interfered with the work of PLAINTIFFS' gardeners, trespassed
6  without PLAINTIFFS' permission or consent, and kept PLAINTIFFS' property under
7  surveillance, stalking PLAINTIFFS, taking photographs and intimidating the gardeners whom he
8  referred to as "illegal Mexicans." Communications by and between KONGSGAARD,
9  GOLDMAN, CZAP, and PELETTA disparage PLAINTIFFS using racially derogatory terms
10  which employ racial stereotypes and including malicious comments in furtherance of their
11  conspiratorial acts. In e-mail communications, PELETTA urged County of Napa code
12  compliance officers to take action against PLAINTIFFS using racial stereotypes to make his
13  case. PELETTA wrote: *PLAINTIFFS "lie under oath," "cheat," evade taxes, "operate above*
14  *the law with willful disregard of the law and common good," "promote the underground*
15  *economy and simply cannot be trusted," and that "Wang does not have any ethics or scruples"*
16  *among other derogatory comments and claims of unlawful conduct. He encouraged Napa*
17  *County to take action against Wang for code violations.* (WANG 000105-106, marked as
18  Exhibit F.)

19      42.   On March 28, 2019, in an exchange of emails between GOLDMAN and CZAP,
20  GOLDMAN called WANG "*a complete basket case,*" and stated that PLAINTIFF *"Wang is*
21  *facing the expenditure of millions of dollars and is going to watch his little castle grounds be*
22  *dismantled piece-by-piece. We will set up lawn chairs on Martha's property to watch the show!"*
23  (KONGSGAARD 00260, marked as Exhibit G).

24      43.   On March 29, 2019 in an exchange of emails between KONGSGAARD and
25  CZAP, CZAP characterized PLAINTIFFS as "*Chinese Mafia.*" (KONGSGAARD 00254-5,
26  marked as Exhibit H).

27      44.   On or about September 13, 2018, PELETTA wrote to Gregory Baxter, the Code
28  Compliance Officer for Napa County in charge of the code enforcement case no. CE18-00201

10

1    requesting an extension for 45 days to respond.  Therein PELETTA advised that "*in future*

2    *correspondences, I may reference GWOW (Great Wall of Wang) my project name for the clean-*

3    *up and remediation effort".* (PELETTA 0441, marked as Exhibit I).

4           45.     On or about September 26, 2018 and monthly until January 17, 2019, PELETTA

5    in meetings hosted at his home prepared a power point presentation titled: *"GWOW Project*

6    *Status Report."* The acronym stands for *"The Great Wall of Wang."* (PELETTA 0406, 0432 –

7    0433 marked as Exhibit J).  The power point presentation lists the participants as including

8    various members of the community and local government.

9           46.     PELETTA and CZAP have continued to verbally express racial slurs and referring

10    to PLAINTIFFS and their property in emailed communications copied to KONGAGAARD and

11    GOLDMAN, which contain references to the *"Great Wall of Wang"* and commission of crimes

12    including failure to pay taxes, insurance fraud, disregard of immigration laws and building, water

13    and fish and wildlife code violations.

14                           **FIRST CAUSE OF ACTION**

              **(Racial Discrimination in the Making or Enforcement of Contract)**
15

16           47.     PLAINTIFFS incorporate and reallege, as though fully set forth herein, each and

every allegation set forth in the preceding paragraphs of this Complaint.
17

18           48.     PLAINTIFFS are United States citizens of the Asian race and Chinese descent who

were denied the same rights as enjoyed by white citizens of the United States to make or enforce
19

20 a contract to purchase real property.

21           49.     KONGSGAARD's and GOLDMAN's discrimination against PLAINTIFFS is in

violation of the rights of PLAINTIFFS afforded them by the Civil Rights Act of 1866, 42 U.S.C.
22

23 § 1981, as amended by the Civil Rights Act of 1991.

24           50.     KONGSGAARD refused to comply with the terms of the PURCHASE

AGREEMENT.  Rather than take steps to comply with the PURCHASE AGREEMENT,
25

26 KONGSGAARD intentionally entered into a new Williamson Act agreement with the County of

Napa in June 2011 and she and GOLDMAN waited a year and a half later until January 2013, to
27

28 inform PLAINTIFFS that she would not sell them any portion of the 550 STONECREST except

1  the area occupied by PLAINTIFFS' improvements.  GOLDMAN communicated a settlement

2  offer to YOUNG to replace the existing PURCHASE AGREEMENT and threatened to deny

3  PLAINTIFFS access to the improvements on 550 STONECREST if they did not accept his offer.

4  On information and belief, KONGSGAARD and GOLDMAN, between November 18, 2012 and

5  the present, engaged in negotiations with CZAP regarding his potential purchase of the same 12-

6  acre portion of the 550 STONECREST that was the subject of the PURCHASE AGREEMENT.

7        51.    KONGSGAARD's and GOLDMAN's refusal to honor the terms of the

8  PURCHASE AGREEMENT is ongoing.  On information and belief, if not for PLAINTIFFS'

9  Asian race and Chinese descent, KONGSGAARD and GOLDMAN would have complied with

10  the PURCHASE AGREEMENT and allowed PLAINTIFFS the benefits, privileges, terms, and

11  conditions thereof.

12        52.    By the conduct described above, KONGSGAARD and GOLDMAN intentionally

13  deprived PLAINTIFFS of the same rights as are enjoyed by white United States citizens to make

14  and enforce contracts and to enjoy all benefits, privileges, terms, and conditions of the

15  contractual relationship.

16        53.    As a result of KONGSGAARD's and GOLDMAN's discrimination in violation of

17  42 U.S.C. §1981, PLAINTIFFS have been denied the right to make, enforce, and enjoy the

18  benefits, privileges, terms, and conditions of a contract to purchase property adjacent to their

19  home, the breach of which PLAINTIFFS are entitled to  monetary relief.  PLAINTIFFS have

20  suffered anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of

21  KONGSGAARD's and GOLDMAN's actions, thereby entitling them to compensatory damages.

22        54.    In her discriminatory actions as alleged above, KONGSGAARD and GOLDMAN

23  acted with malice or conscious and deliberate disregard for the rights of PLAINTIFFS, thereby

24  entitling them to an award of punitive damages.

25        55.    WHEREFORE, to remedy the violations of PLAINTIFFS' rights secured by

26  Section 1981, PLAINTIFFS pray for judgment against KONGSGAARD and GOLDMAN as

27  hereinafter set forth.

28

## SECOND CAUSE OF ACTION
**(Racial Discrimination in the Sale of Real Property)**

56.    PLAINTIFFS incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

57.    KONGSGAARD's discrimination against PLAINTIFFS is in violation of the rights of PLAINTIFFS afforded to them by the Civil Rights Act of 1866, 42 U.S.C. § 1982.

58.    KONGSGAARD has refused to comply with the executed PURCHASE AGREEMENT and denied PLAINTIFFS' rights as provided therein. KONGSGAARD maintains possession of the 12-acre portion of 550 STONECREST which, on information and belief, remains ten years after execution of a purchase agreement with the PLAINTIFFS, available for sale.

59.    PLAINTIFFS have easement rights over approximately five acres on the 550 STONECREST property where they made improvements and constructed fire trails between 1995 and 1997. PLAINTIFFS' easement rights include the right to continue to maintain the improvements in place, use the fire trails to remove dead trees, shrubs, and tall weeds and grass that present a fire danger in the vicinity of the fire trails, maintain the area for purposes of fire prevention, erosion control, social use and entertainment, and gardening.

60.    Since 2017, KONGSGAARD directed her agents to interfere with the maintenance of the water pump on 460 STONECREST, interfere with the work of PLAINTIFFS' gardeners in the easement area of 550 STONECREST, strip out trees and plantings which provided cover from the road on and near the front of 460 STONECREST, trespass onto 460 STONECREST without permission or consent and to take photographs, stalk them and engage in a pattern and practice of intimidation and harassment intended to deprive PLAINTIFFS of quiet enjoyment of their property, intimidate and harass in order to drive them out of the neighborhood.

61.    KONGSGAARD's discriminatory conduct was expressly designed to drive PLAINTIFFS out of their home and rightful possession of the disputed easement on 550 STONECREST.

62.    KONGSGAARD's refusal to comply with the terms of the executed PURCHASE

13

1   AGREEMENT and attempts to drive PLAINTIFFS off their property and out of the

2   neighborhood are ongoing and continue to this day.  On information and belief, if not for

3   PLAINTIFFS' Asian race and Chinese descent, KONGSGAARD would have complied with the

4   PURCHASE AGREEMENT and would not have attempted to drive PLAINTIFFS from their

5   home.

6         63.   By the conduct described above, KONGSGAARD intentionally deprived

7   PLAINTIFFS of the same rights as are enjoyed by white United States citizens to purchase and

8   hold real property.

9         64.   As a result of KONGSGAARD's discrimination in violation of 42 U.S.C. §

10  Section 1982, PLAINTIFFS have been denied the right to purchase and hold real property, the

11  breach of which PLAINTIFFS are entitled to monetary relief.  PLAINTIFFS have suffered the

12  loss of personal property and the fruits of their labor, anguish, humiliation, distress,

13  inconvenience, and loss of enjoyment of life because of KONGSGAARD's actions, thereby

14  entitling them to compensatory damages.

15        65.   In her discriminatory actions as alleged above, KONGSGAARD acted with malice

16  or conscious and deliberate disregard for the rights of PLAINTIFFS, thereby entitling them to an

17  award of punitive damages.

18        66.   WHEREFORE, to remedy the violations of PLAINTIFFS' rights secured by

19  Section 1982, PLAINTIFFS pray for judgment against DEFENDANT KONGSGAARD as

20  hereinafter set forth.

21                        **THIRD CAUSE OF ACTION**
                    **(Conspiracy to Deprive Equal Protection Under the Laws)**
22

23        67.   PLAINTIFFS incorporate and reallege, as though fully set forth herein, each and

24  every allegation set forth in the preceding paragraphs of this Complaint.

25        68.   As described more fully above, KONGSGAARD, CZAP, and PELETTA each

26  conspired, directly and indirectly, for the purpose of depriving PLAINTIFFS of equal protection

27  under the laws.  In particular, KONGSGAARD, CZAP and PELETTA conspired to deny

28  PLAINTIFFS the same rights as enjoyed by white citizens to make and enforce a contract to

1    purchase real property, to purchase and hold real property and quiet enjoyment of the same.

2    KONGSGAARD, CZAP and PELETTA's conspiracy was motivated by racial animus toward

3    PLAINTIFFS because of their Asian race and Chinese descent.

4         69.    In doing so, KONGSGAARD, CZAP and PELETTA took actions in furtherance of

5    this conspiracy, causing injury to PLAINTIFFS.  KONGSGAARD, CZAP and PELETTA each

6    coordinated with the other DEFENDANTS to deprive PLAINTIFFS of equal protection of the

7    law in their use and enjoyment of their easement and 460 STONECREST and enforcement of the

8    PURCHASE AGREEMENT.

9         70.    CZAP communicated with KONGSGAARD and PELETTA about his interference

10   with the work of PLAINTIFFS' gardeners, his removal of trees and plantings which provided

11   cover from the road on and near the front of the property, his trespass on PLAINTIFFS' property

12   to take photographs, stalking of PLAINTIFFS, ongoing surveillance of PLAINTIFFS' property,

13   and efforts to subject PLAINTIFFS to investigation and citation by the Napa County Planning,

14   Building and Environmental Services Department, Engineering Division, USDA Natural

15   Resources Conservation Service and California Department of Fish and Wildlife and for alleged

16   regulatory violations on 460 STONECREST as described more fully above, and he received

17   supportive responses from Defendants.  In communications with KONGSGAARD and/or

18   PELETTA about these actions, CZAP showed racial animus for DEFENDANTS' conspiracy by

19   using racial stereotypes and racially charged terms to refer to PLAINTIFFS.  For example, he

20   accused PLAINTIFFS of illegal activity, called them "Chinese Mafia," and stated his wish to

21   wear a "rude" shirt referencing the Great Wall of Wang.  CZAP instigated a confrontation with

22   WANG, moving towards him aggressively within about 3 feet, and stating, "We are going to

23   kick you chinks off this hill and drive you out of the county.  We have the whole neighborhood

24   against you and we have the County against you."  He also said, " I'm tired of seeing your illegal

25   Mexicans out by your gate every morning."  CZAP acted with, and informed others he acted

26   with, full permission from KONGSGAARD and PELETTA to serve their interests.  He

27   communicated with KONGSGAARD and PELETTA on actions he took with respect to

28   PLAINTIFFS, their property, and his efforts to have PLAINTIFFS cited for claimed legal

15

1    violations, including giving a guided tour of their properties for state, regional and local
2    enforcement agencies. KONGSGAARD and PELETTA accepted and acquiesced to his racist
3    slurs.

4         71.    PELETTA communicated with and acted with the support of KONGSGAARD
5    regarding his efforts to subject PLAINTIFFS to investigation and citation by code compliance
6    officers for the Napa County Planning, Building and Environmental Services Department,
7    Engineering Division, USDA Natural Resources Conservation Service and California
8    Department of Fish and Wildlife for alleged regulatory or code violations on PLAINTIFFS'
9    property. PELETTA showed racially discriminatory animus for DEFENDANTS' conspiracy by
10   using racially charged terms to refer to PLAINTIFFS in his communications about these actions.
11   For example, in an email communication about PLAINTIFFS' alleged violations to Napa Code
12   Compliance Officers, PELETTA encouraged them to take enforcement action against
13   PLAINTIFFS for their alleged encroachment on both his and KONGSGAARD's land among
14   other claimed violations and relied on racial stereotypes and malicious and false allegations to
15   support such action. He wrote that PLAINTIFFS *"lie under oath," "cheat," evade taxes,*
16   *"operate above the law with willful disregard of the law and common good," and "promote the*
17   *underground economy and simply cannot be trusted."* (WANG 000105-000106, marked as
18   Exhibit F.) Over a five-month period, PELETTA prepared a monthly power point presentation
19   with the title *"GWOW Project Status Report,"* with *"GWOW" referring to the "Great Wall of*
20   *Wang."* He made the report available to members of the community and local government.
21   KONGSGAARD and CZAP were aware of and acquiesced to his racist slurs. PELETTA
22   communicated with KONGSGAARD and CZAP on actions he took to with respect to
23   PLAINTIFFS, their property, and his efforts to have PLAINTIFFS cited for claimed legal
24   violations as part of their effort to drive PLAINTIFFS out of the neighborhood.

25        72.    KONGSGAARD financially supported and communicated with CZAP and
26   PELETTA about collective efforts to interfere with PLAINTIFFS' property and other legal rights
27   and their racist slurs. For example, in response to CZAP's email calling PLAINTIFFS *"Chinese*
28   *Mafia,"* KONGSGAARD replied, *"Don't get yourself killed!"* In response to CZAP's email

FIRST AMENDED COMPLAINT
Case No. 3:19-cv-00907

regarding PLAINTIFFS' alleged rock thievery, she wrote that the theft was not surprising. GOLDMAN gave permission to CZAP to publish to the neighborhood a cease and desist letter sent to PLAINTIFFS. GOLDMAN called PLAINTIFFS "conspiracy theorists."

KONGSGAARD made CZAP her agent to represent her interests with respect to PLAINTIFFS' property and to further their efforts to have PLAINTIFFS cited for legal violations to drive PLAINTIFFS out of the neighborhood. KONGSGAARD supported and approved of all of the efforts against the PLAINTIFFS by CZAP and PELETTA. KONGSGAARD also entered into negotiations to sell the same land subject to their PURCHASE AGREEMENT with PLAINTIFFS to CZAP.

73.   DEFENDANTS' conspiracy is in violation of 42 U.S.C. § 1985(3).

74.   As a result of this conspiracy, PLAINTIFFS have been denied the right to make and enforce contracts and purchase and hold real property, and PLAINTIFFS have suffered the loss of personal property and the fruits of their labor, anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of KONGSGAARD, CZAP and PELETTA's ' actions, thereby entitling them to compensatory damages.

75.   The misconduct described in this Court was undertaken with malice or conscious and deliberate disregard for the rights of PLAINTIFFS, thereby entitling them to an award of punitive damages.

76.   WHEREFORE, to remedy the violations of PLAINTIFFS' rights, PLAINTIFFS pray for judgment against KONGSGAARD, CZAP and PELETTA as herein set forth.

**FOURTH CAUSE OF ACTION**
**(Failure to Prevent Conspiracy to Deprive Equal Protection Under the Laws)**

77.   PLAINTIFFS incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

78.   Each of KONGSGAARD, GOLDMAN, CZAP and PELETTA was aware of the conspiracy in violation of 42 U.S.C. § 1985 by DEFENDANTS, and each individually or collectively had the power to prevent or aid in preventing the commission of acts in support of the conspiracy and neglected to prevent or aid in preventing such acts.

79.     Each DEFENDANT'S failure to prevent or aid in preventing acts in furtherance of the conspiracy was motivated by racial animus toward PLAINTIFFS because of their Asian race and Chinese descent including but not limited to CZAP's e-mailed comment to KONGSGAARD that PLAINTIFFS are "*Chinese Mafia.*" PELETTA used the racial slur "*The Great Wall of Wang*" referring to PLAINTIFFS' retaining wall built to protect their property in e-mails to the Napa County Building Department.  In addition, PELETTA prepared a power point presentation for the Napa County Building Inspector which he titled "*The Great Wall Of Wang*" continuing use of the racial slur in an attempt to bias and prejudice Gregory Baxter, a white Napa County Building Code Compliance Officer against PLAINTIFFS.  PELETTA also expressed racial animus and relied on racial stereotypes in communications with other Napa County Code Compliance officers in an effort to prompt enforcement action against PLAINTIFFS and deny them equal protection of the laws.  KONGSGAARD, GOLDMAN, CZAP, and PELETTA each were aware of, acquiesced in, and failed to prevent these and other acts in furtherance of the conspiracy to deny PLAINTIFFS such equal protection of the laws, despite having the ability to do so.

80.     DEFENDANTS' failure to prevent the conspiracy is in violation of 42 U.S.C. § 1986.

81.     As a result of each DEFENDANT's failure to prevent or aid in preventing CO-DEFENDANTS' conspiracy or acts in furtherance of the conspiracy, PLAINTIFFS have been denied the right to make and enforce contracts and purchase and hold real property, and PLAINTIFFS have suffered the loss of personal property and the fruits of their labor, anguish, humiliation, distress, inconvenience, and loss of enjoyment of life because of DEFENDANTS' actions, thereby entitling them to compensatory damages.

82.     The abhorrent conduct described in this Court was undertaken with malice or conscious in deliberate disregard for the rights of PLAINTIFFS, thereby entitling them to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for judgment against DEFENDANTS and as follows:

18

1.  For general damages for property damage according to proof;

2.  For special damages according to proof;

3.  For consequential damages;

4.  For costs of suit herein incurred;

5.  For reasonable attorneys' fees according to proof;

6.  For punitive damages;

7.  For such other and further relief as the court may deem proper.


Dated: September 30, 2020     By: /s/ Christopher A. Nedeau

                Christopher A. Nedeau (81297)

*Attorney for FRANCIS WANG, individually and as Trustee of WFT-TNG, a California Trust and LAURA YOUNG, individually and as Trustee of WFT-TNG, a California Trust*

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all the claims asserted in this Complaint so triable.

Dated: September 30, 2020     By:

                /s/ Christopher A. Nedeau

                Christopher A. Nedeau

                CHRISTOPHER A. NEDEAU,
                LAW OFFICES OF GREGORY J. RYKEN
                750 Battery Street, Seventh Floor
                San Francisco, California 94111
                Telephone: (415) 524-0070

                Attorney for FRANCIS WANG, individually
                and as Trustee of WFT-TNG, a California
                and LAURA YOUNG, individually and as
                Trustee of WFT-TNG, a California Trust

19

# EXHIBIT A

May 28, 2010

Dear Frank,

My daughter, Helen, mentioned there is a message from you on our phone machine at home. We're in France, so I'm writing.

We've done quite a bit of discovery regarding the Williamson Act. It seems that it will be possible to cancel our contract. At this point the only reason to cancel would be to partition off a piece of 550 Stonecrest so that you could buy it. Before we would proceed in that direction we would want an offer from you, then a signed agreement indicating the amount of land you would want, and then a check for earnest money.

We return to Napa June 28. We will be home just two weeks. I would hope we could organize some sort of deal then. My email address is marykongsgaard@gmail.com if you would like to be in contact in the meantime.

Do you have a bid for the road work? Just wondering.

Sincerely,

Mary K.

DEFS 0449

# EXHIBIT B

FRANCIS S.L. AND LAURA W.T. WANG
460 STONECREST DR. NAPA, CA 94558
252-8253

July 8 2010

By Telecopier: 257-2283
Mrs. Mary Kongsgaard Williams
4345 East Third Ave.
Napa, CA 94558

Re: Portion of 550 Stonecrest Dr.

Dear Mary:

It was good to speak with you today. Further to our recent conversations and your call today, this is to memorialize our agreement to purchase a 12 acre portion of undeveloped land ("12 Acre Parcel") without any water supply, in the parcel known as 550 Stonecrest Dr. The 12 Acre Parcel shall be roughly in accordance with the lines delineated on the attached plot map. We understand that you will first apply to Napa County for a lot-line adjustment between 500 Stonecrest and 550 Stonecrest, which may take a half-year, and for removal of the Williamson Act on the 550 Stonecrest Dr. parcel. After that adjustment is made, you will be able to commence the lot-line adjustment to split the 550 parcel so that 10.85 acres remain in that parcel, and sell the remaining 12 Acre Parcel to us. As we would like the property line to follow the natural ridge lines or contours as much as possible, we suggest that the .85 acres or any portion of it be available to include in the 12 Acre Parcel, if needed. The purchase price will be adjusted pro rata if any addition to the 12 Acre Parcel is required.

We have agreed to pay the sum of US$ 400,000.00 for the 12 Acre Parcel. Napa County has orally informed us the 12 Acre Parcel must be affixed and merged into our existing parcel at 460 Stonecrest Drive, and cannot be a separate parcel. However, we cannot purchase and merge the 12 Acre Parcel unless the burden of the Williamson Act contract is removed. Therefore, our agreement to buy is limited by the following conditions:

1) The parcel is not subject to the Williamson Act; and any and all liens, charges, restrictions and/or encumbrances with respect to that act shall have been discharged, removed, and/or satisfied with respect to the 12 Acre Parcel.
2) The purchase of the 12 Acre Parcel will not trigger a reappraisal of our existing parcel. Only the value of the 12 Acre Parcel will be added to the present appraised value of the 460 Stonecrest Drive Parcel to arrive at the appraised value of the merged and combined parcel. Napa County has orally assured us that this will be the procedure they will follow. We will need to obtain a more formal understanding with the County before the merger is finalized.
3) The lot-line adjustment will be commenced and completed as soon as possible. To ensure the smooth progression of the surveys, we will be involved in the survey process.
4) There is no financing contingency. Payment will be made simultaneously upon transfer of good and clear title.

We would like your confirmation that these terms represent your understanding and intent as well. Enclosed is a check for the sum of $ 7,500 for the option to purchase the land on the terms described above. The amount is earmarked as our contribution to the survey costs necessary for the lot-line adjustment between the 550 and 460 Stonecrest parcels as provided above. Please feel free to call if you have any questions.

Yours truly,

Laura Wang                                 Frank Wang

Agreed and Countersigned:

Mary Kongsgaard    for Mary, John & Martha Kongsgaard

Mary Kongsgaard    Martha Kongsgaard    John Kongsgaard    9/8/2010

DEFS 0312

# EXHIBIT C

APPLICATION #: __P11-00021__
DATE RECORDED: _____
FINAL FILING DATE: _____

TYPE "H"
APPLICATION FOR
AGRICULTURAL PRESERVE CONTRACT

NAPA COUNTY, CALIFORNIA

NAMES OF OWNER/OWNERS AS RECORDED (include trust deed or other encumbrance holders). Use separate sheet if necessary:

_Mary Kongsgaard, John Kongsgaard, Martha Kongsgaard_

SITE ADDRESS: _550 Stonecrest Dr. Napa, CA    94558_

APPLICANT'S NAME (if other than above): _____

APPLICANT'S ADDRESS: _4345 E. Third Ave. Napa, CA  94558_

AGENT FOR NOTICE (person designated by Owner to receive any and all notices and communications from Napa County during the life of this Contract; Owner shall notify County in writing of any change of designated person or change of address prior to or during the term of the Contract):

Name: _Mary Kongsgaard_    Street address: _4345 E. Third Ave_
Phone: _707-257-2263_    City, State, Zip: _Napa, CA  94558_
_cell 707 815 4000_    DESCRIPTION OF PROPERTY

| Present Agricultural Use | Assessor's Parcel No. | Proposed Acreage |
|---|---|---|
| | _052-030-052_ _existing APN_ | _22.2_ |
| | | |
| | | |

TOTAL ACREAGE _____

LAND TENURE (Circle One):    Owner-operated/occupied    Leased    Other _____

_I certify that the above statements are correct:_
OWNER/OWNERS SIGNATURE: _Martha Kongaard_
_Mw K_

APPLICANT'S SIGNATURE (if different): _Mary Kongsgaard_

Please include the following information with this application form:

- A copy of the deed.
- Copies of all trust deeds and other recorded encumbrances.
- A legal description for the property.
- A copy of the Assessor's Parcel Map showing existing structures and land use by acreage.

FOR PLANNING DEPARTMENT USE ONLY

THE ABOVE PROPERTY IS WITHIN ONE MILE OF A CITY    YES _____    NO _____

PRESENT ZONING: _____    PRESENT GENERAL PLAN DESIGNATION: _____

Receipt #_____    Date: _____    Received by: _____

Page 1 of 2

DEFS 0177

# EXHIBIT D

April 4, 2011

Dear Laura and Frank,

We regret that we have been unable to reach an agreement concerning the 12 acres belonging to 550 Stonecrest.  We are no longer interested in pursuing negotiations. With this letter we are returning the check for $7500. that you gave to our brother, John Kongsgaard. It is in the form of a cashier's check.

Sincerely,

Mary Kongsgaard
Martha Kongsgaard

# EXHIBIT E

| | |
|---|---|
| **From:** | alczap@gmail.com |
| **Sent:** | Tuesday, July 24, 2018 1:40 PM |
| **To:** | Gregory Baxter |
| **Cc:** | kongsgaard martha; Brian Peletta; Peter Goldman |
| **Subject:** | Wang, 460 Stonecrest |
| **Attachments:** | 3939-00.pdf |

Hi Greg,

I have copied Brian and Martha on this email, as well as Peter, Martha's husband, who are respectively at 440 and 500-550 Stonecrest.

Thank you for the follow through visit this morning. As I said to you, Martha has given me permission to walk anywhere on her property to perform work to lessen fire danger as well as for any reason that is beneficial to her interest.

Martha, would you be kind enough to replay to this email indicating your willingness to let Napa County officials walk your property for evaluation of the changes Wang has made on your property and his. This way, without trespass, they can document from your property Wang's work on his property prior to the process of them gaining access with or without his permission. It may take a few weeks to get a court order if he is stubborn. Additionally, I am providing your phone number and address to Greg for any official communication he will need to send to you.

 206 817 5473 and address:  4408 Beach Drive S.W.  Seattle WA 98116

Attached is the survey of Brian's property line showing the massive encroachment by Wang on his property. It is several hundred feet long, perhaps 15-22 feet high in places and about 25 feet wide in places. It appears that the stone stack wall they built is with the wrong type of precast stack stone and likely will all have to come out under supervision of engineers on a daily basis.

The surveyors have made a preliminary pass and we are finding a time where I can be with them for the corner setting as it appears that Wang has removed some markers. It has been strongly suggested to me that the property line be delineated very clearly so photos can be taken that are detailed showing the encroachment with no question. This will mean placing a marking line 1 or 2 feet on your side the length of the property line. This way Wang cannot say the surveyors encroached and at any future trial of Wang there will be an obviousness to the encroachment documented perfectly in pictures.  Unless you tell me differently, I will instruct the surveyors to do so and be careful not to mark any part of the Wang property.  Some of the stakes put in by the surveyors with yellow flags on them have already had the flags removed by Wang people.  We will also ask Greg to get a stipulation in any stop order that they are not allowed to remove any survey marks.

Martha, I have no problem running point with Wang, it would be fun. I have dealt with attorneys, judges and government officials for many years, including helping the FDA on some projects so this is really not hard.

With best regards,
Al

8

KONGSGAARD 00041

# EXHIBIT F

as soon as possible so that the property can be restored to its natural state and in compliance with Napa code.

Peter Goldman

---------- Forwarded message ---------
From: **Bagley, Shana** <Shana.Bagley@countyofnapa.org>
Date: Wed, Mar 27, 2019 at 9:47 PM
Subject: Re: 460 /440 Stonecrest Demand Letters
To: Brian Peletta <bpeletta@gmail.com>, Baxter, Gregory <Gregory.BAXTER@countyofnapa.org>, Flaherty, Timothy M. <tflaherty@clarkhill.com>, Melissa Palozola <mpalozola@clarkhill.com>

Mr. Peletta, Ms. Palozola, and Mr. Flaherty,

Please see the attached demand letter that I sent to Mr. Wang and Mr. Jameson today.

Shana

**From:** Brian Peletta <bpeletta@gmail.com>
**Sent:** Sunday, March 24, 2019 9:59:52 AM
**To:** Bagley, Shana; Baxter, Gregory; Flaherty, Timothy M.; Melissa Palozola
**Subject:** 460 /440 Stonecrest Demand Letters

Shana and Greg:

Thank you both for discussing the code violations caused by Wang. As you know in August 2018 the County became aware of the significance of the code violations caused by Wang as a result of my property survey. The Wang's have knowingly, consciously been engaged in:
- unlawful construction,
- encroached on my land and Kongsgard,
- cause damage to the environment,
- avoid payroll taxes, worker's compensation, permit fees,

clearly a case of gross negligence for admittedly 30 years. I believe you understand the dependencies and constraints I have with respect to correction action of the code violations I've been cited for. I had nothing to do with these codes violation Wang created them.

The law firm of Wang and Wang is a global powerhouse with offices throughout the world and a significant amount of resources. I do not have the financial resources that Wang has. As you have witnessed they have aggressively pursued litigation when I built my fence to protect me from potential liability and risks. I believe the County will get a similar response. Wang does not have any ethics or scruples, they lie under oath in their declarations, cheat the government out of taxes, private citizens out of land and property rights, promote the underground economy and simply cannot be trusted. They are privileged and operate above the law with willful disregard of the law and common good. They are a disgrace to their profession and I can't believe UC Berkeley and other institutions would choose to have any association with Wang and Wang when they learn about their life of hypocrisy.

2

WANG 000105

Based on Kongsgard and Peletta cases to date, the probability of lengthy and costly litigation might be expected. Wang and Wang have had almost a year to prepare for this battle.

Know you have our full cooperation. We would appreciate a copy of the demand letter when it becomes public record. While I do not expect special treatment, I do appreciate the County's consideration of my circumstances.

Best regards,

--
Brian Peletta
bpeletta@gmail.com
415-860-1812 Cell



--
Brian Peletta
bpeletta@gmail.com
415-860-1812 Cell

Begin forwarded message:

**From:** Brian Peletta <bpeletta@gmail.com>
**Subject: Fwd: 460 /440 Stonecrest Demand Letters**
**Date:** March 27, 2019 at 4:52:16 PM PDT
**To:** Al Czap <aiczap@gmail.com>


---------- Forwarded message ---------
From: **Brian Peletta** <bpeletta@gmail.com>
Date: Sun, Mar 24, 2019 at 9:59 AM
Subject: 460 /440 Stonecrest Demand Letters
To: Shana Bagley <shana.bagley@countyofnapa.org>, Baxter, Gregory <Gregory.BAXTER@countyofnapa.org>, Flaherty, Timothy M. <tflaherty@clarkhill.com>, Melissa Palozola <mpalozola@clarkhill.com>


Shana and Greg:

Thank you both for discussing the code violations caused by Wang. As you know in August 2018 the County became aware of the significance of the code violations caused by Wang as a result of my property survey. The Wang's have knowingly, consciously been engaged in:

- unlawful construction,
- encroached on my land and Kongsgard,
- cause damage to the environment,
- avoid payroll taxes, worker's compensation, permit fees,

3

WANG 000106

# EXHIBIT G

**From:** Peter Goldman [mailto:pgoldman@wflc.org]
**Sent:** Thursday, March 28, 2019 2:04 PM
**To:** alczap@gmail.com
**Cc:** kongsgaard martha <martha@kongsgaard-goldman.org>
**Subject:** RE: Wang

Jesus, that guy is a complete basket case. I'm sorry that he complained about your after the fact building permit situation. I'm surprised the county even responded to him given that he's the biggest code violator in the County. It's like the arsonist calling the fire department to report that his neighbor is creating a fire hazard by letting his grass grow too long.

Personally, I did not realize one needs a building permit for windows and doors (must be energy code motivated?).

I will keep this on file. Of course, you have the right to seek a protective order if you feel genuinely threatened by him. Wang is facing the expenditure of millions of dollars and is going to watch his little castle grounds be dismantled piece-by-piece. We will set up lawn chairs on Martha's property to watch the show!

Peter

**From:** alczap@gmail.com <alczap@gmail.com>
**Sent:** Thursday, March 28, 2019 1:42 PM
**To:** Peter Goldman <pgoldman@wflc.org>
**Subject:** Wang

Hi Peter,
Don't want to bother Martha with this.

Wang filed a complaint a few weeks ago about me doing unpermitted work on my guest house and old carport. I had the building guy, Greg Baxter, out this a.m. to sort it out. I need to apply for after the fact permits on replacing doors and windows, etc...

9

KONGSGAARD 00260

# EXHIBIT H

From: kongsgaard martha
Sent: Friday, March 29, 2019 12:29 PM
To: 'Al Czap' <alczap@gmail.com>
Subject: RE: Wow

Got it.   I spoke to Imboden this morning about a lot of things.  He is getting geared up to think about this pump redo business.  There is so much going on.  I have to fix the little cottage's shower and bathroom, the main house bath room and then pay all of these lawyer bills from the Wang deal.  It is so surreal!
I can't believe that little clip of him.  No threat!  Bad karma, Jack....????
M

-----Original Message-----
From: Al Czap [mailto:alczap@gmail.com]
Sent: Friday, March 29, 2019 11:55 AM
To: kongsgaard martha <martha@kongsgaard-goldman.org>
Subject: Re: Wow

See the texts I just sent.

This is the tree thing that Matt at 473 (I think) Lehr sent a text about.  There was a tree on the power line outside the fence at the water station.  PGE would not do anything.  I texted you, got Wang's contact, Matt could not reach them.  I told him we could remove it with excavator but his wife did not want him to.  I went down and pulled it off the line before it brought the line down on a person or vehicle.  It was on your property with one root going into Wang property. I set the tree down, Wang's guys cut it up and put it in their little vehicles and took it through the gate.  Laura came out and accused me of stealing a tree. I pointed out it was not on her property.  She stomped her foot with an arrogant huff and said it was.  I got the survey done to prove them wrong.  She later filed a complaint of theft and trespass and the Deputy came out and I showed the county map and where the tree was and he said I was in the right.

Also in the text is when the pump failed and I got hold of Imboden as they could not get out to fix it.  Mike told me to jump the fence and which breakers and relays to switch as well as which valves to throw for the backup pump.  I texted Matt to see if it all worked well.  The water was muddy for a bit from the pressure tank.  Later they came out and

3

KONGSGAARD 00254

replaced the pump motor or the pump.  It all needs replacing.  It may be their property but the association or any member has the right to deal with a problem.

They are just greedy  arrogant people.

best
A

> On Mar 29, 2019, at 10:05 AM, kongsgaard martha <martha@kongsgaard-goldman.org> wrote:
>
> Oh boy
> On another topic in their complaint they talk about An encroachment of an electrical utility powerline on their property. Do you know what this is?
>
>> On Mar 29, 2019, at 9:21 AM, Al Czap <alczap@gmail.com> wrote:
>>
>> Chinese Mafia! 😊
>>
>>> On Mar 29, 2019, at 9:15 AM, kongsgaard martha <martha@kongsgaard-goldman.org> wrote:
>>>
>>> Don't get yourself killed!
>>> Good lord.... Who talks like that?
>>>
>>> Martha

4

KONGSGAARD 00255

# EXHIBIT I

**Baxter, Gregory**

| | |
|---|---|
| **From:** | Brian Peletta <bpeletta@gmail.com> |
| **Sent:** | Thursday, September 13, 2018 8:40 AM |
| **To:** | Baxter, Gregory |
| **Subject:** | Fwd: Extension request |
| **Attachments:** | County of Napa Building Ext 9132018 Peletta Wang.png |

Greg:
Reference Code Enforcement case # CE18-00201

Attached please find my extension request for 45 days from the date of Violation Letter issued by the County of Napa related to Wang's encroachment. In future correspondences, I may reference GWOW ( Great Wall of Wang) my project name for the clean-up and remediation effort.

Please confirm this is acceptable an approved extension.

From: **Baxter, Gregory** <Gregory.BAXTER@countyofnapa.org>
Date: Tue, Sep 11, 2018 at 2:27 PM
Subject: Extension request
To: Brian Peletta <bpeletta@gmail.com>


Your Code Enforcement case # is CE18-00201

1

**COUNTY 000047**
**PELETTA 0441**

# EXHIBIT J



# GWOW
# Project
# Status
# Report

Brian Peletta • Jan 17,, 2019

COUNTY 000012
PELETTA 0406

# Oct 2018 Status Report

Peletta Violations 430 Stoneview

Wildlife and Board of Water of CA performed a site visit.

Action: Water Board to engage with the County on oversight and review erosion control plans.

No progress because of Wang delays in producing Topo Maps of all Walls

Next Steps: Wang to excavate and provide sample evidence proving the walls are properly designed and engineered to mfg specifications and code compliant. No timeline provide by Wang.

COUNTY 000038
PELETTA 0432

# Attendees

## Sept. 26, 2018

Site Visit By State of California

Water Board

Wildlife

### Subject Matter Experts

Agnes Farres Water Board State of Cal

Garrett Allen Wildlife Scientist

Residents

Al Czap 600 Stonecrest - Guide

Brian Peletta 440 Stonecrest Host

Martha Kongsgaard Property Owner***

Representatives Peletta /Kongsgaard

Tim Flaherty Lead Attorney Clark hill

Melissa Palozola Senior Attorney Clark Hill

COUNTY 000039
PELETTA 0433